Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
Navid Afshar
Nevada State Bar No. 14465
Assistant Federal Public Defenders
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Navid_Afshar@fd.org

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GJERGI LUKE JUNCAJ,<br><br>Defendant. | Case No. 2:22-cr-00008-JCM-EJY<br><br>**MOTION TO DISMISS INDICTMENT** |

I.  Introduction

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Tex. v. Johnson*, 491 U.S. 397, 414 (1989). The government's indictment must be dismissed because the charging statute, 47 U.S.C. § 223(a)(1)(C), is both facially unconstitutional and as applied here, violating Gjergi Juncaj's First and Fifth Amendment rights.

## II.    Background

The government alleges that on January 7, 2021, Mr. Juncaj called an election worker at the Nevada Secretary of State's office, threatening them over the phone. ECF No. 2. Different statements were attributed to Mr. Junacj, including that he said "I want to thank you for such a great job you all did on stealing the election, I hope you all go to jail for treason, I hope your children get molested. You all going to fucking die." Exhibit A.[1] The election worker also alleges Mr. Juncaj called back, making the same "threat" and stating the election workers would all go to jail for treason. *Id.* To date, the government has failed to produce corroborating evidence to establish the callback allegations.

The matter was investigated by Detective Lefler, with the Nevada Division of Public Safety Counterterrorism Task Force. Detective Lefler declined to charge Mr. Juncaj, noting:

> On January 15, 2021, Detective Lefler contacted JUNCAJ in reference to these call[s] and warned JUNCAJ that although no threats were made and that what he said was protected speech, that should JUNCAJ make several calls over and over again it could be considered harassment. JUNCAJ stated that he understood and that he did not wish any harm on anyone and that he was merely complaining to a state office of his disagreement with current issues. Due to the fact that JUNCAJ's statements did not meet the definition of the Ninth Circuit Court of Appeals definition of a 'True Threat' it is recommended that this case be closed.

Exhibit B at 3. Additionally, in a later interview with Detective Lefler, regarding his prior investigation, it was reflected that "[d]etective Lefler also spoke with his lieutenant and a senior detective at the fusion center who confirmed that it

---

[1] The attached exhibit was provided through discovery by the government and personal identifiers were redacted by the government. Mr. Juncaj has also redacted an identifier. See generally Nevada Local Rule IC 6-1.

2

wasn't a threat according to the 9th Circuit. After the conversation with Juncaj, Detective Lefler never heard anymore from the Secretary of State's office." Exhibit C at 4.

As several months passed with no further contact between Mr. Juncaj and the Nevada Secretary of State's Office, the matter seemed concluded. That is until September 8, 2021, when Reuters News published an article specifically naming Mr. Juncaj, and criticizing law enforcement for its actions related to him and others. Linda So and Jason Szep, *U.S. Election Workers get Little Help from Law Enforcement as Terror Threats Mount*, Reuters News (Sept. 8, 2021), available at https://www.reuters.com/investigates/special-report/usa-election-threats-law-enforcement/. The investigation of Mr. Juncaj was then reopened. The government will likely claim it reopened the investigation because Mr. Juncaj called the Nevada Secretary of State's office in September 2021, after Mr. Juncaj learned of the soon-to-be-published Reuters article. Ex. C, at pgs. 2-3. Yet the government is not alleging Mr. Juncaj committed any illegal acts based on that contact. Instead, the government only alleges Mr. Juncaj committed the charged offense based on the specific conduct of January 7, 2021.

On January 19, 2022, four months after the Reuters article was published– and over a year after the alleged threats were made–the government finally indicted Mr. Juncaj, charging him with four counts of making a threatening phone call.[2] ECF No. 2. Soon after the indictment, Reuters published an article, seemingly taking credit for Mr. Juncaj's arrest: "[f]ollowing the Reuters story, the Federal Bureau of Investigation opened an investigation into Juncaj, according to a Nevada state government source." Linda So, *Nevada Man Charged with*

---

[2] The counts relate to calls that took place between 8:07 and 8:25 a.m. on January 7, 2021. ECF No. 2, pp. 4–5.

*Threatening State Election Worker*, Reuters News (January 27, 2023), available at https://www.reuters.com/world/us/nevada-man-charged-with-threatening-state-elections-official-2022-01-28/.

### III. Dismissal is required because the statute, 47 U.S.C. § 223(a)(1)(C) violates First and Fifth Amendment protections, and is unconstitutional both facially and as applied here.

The government's indictment must be dismissed because the statute under which Mr. Juncaj is charged, 47 U.S.C. § 223(a)(1)(C), is unconstitutional – both facially and as applied here. His statements, viewed objectively, were expressions of free speech protected by the First Amendment, and the statute's overbreadth and vagueness violate the Fifth Amendment's Due Process Clause. The Ninth Circuit has not directly resolved the constitutionality of § 223(a)(1)(C).[3] This case exemplifies why the statute is unconstitutional and must be invalidated.

### A. The indictment must be dismissed because the overbroad and vague statute is facially unconstitutional.

A facial challenge does not concern itself with the specific application of the statute but is "an attack on the statute itself." *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). A party may attack a statute or regulation for being overbroad or vague. A statute is overbroad when there is a "realistic danger" it will

---

[3] The Ninth Circuit came close to addressing the matter in *United States v. Stahlnecker*, No. 20-50173, 2021 WL 5150046 (9th Cir. Nov. 5, 2021) (unpublished), *cert. denied,* 142 S. Ct. 1391 (2022), where the Ninth Circuit affirmed the conviction, but did not address the merits of whether 47 U.S.C. § 223 is constitutional because appellant did not raise the issue below. Instead, the Ninth Circuit found the constitutional challenge did not constitute clear error because: "There is no Supreme Court case invalidating § 223, nor is there unanimity among the circuits. And the case law in our circuit offers no clear answer that would set the alleged unconstitutionality of § 223 beyond dispute." *Id.* at *3.

4

"significantly compromise recognized First Amendment protections of parties not before the Court." *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (internal citation and quotations omitted). Put another way, a reviewing court may find a statute that imposes lawful limits on certain express activities nonetheless invalid if it also "reaches too much expression that is protected by the Constitution." *DeJohn v. Temple Univ.*, 537 F.3d 301, 314 (3d Cir. 2008). A law is void for vagueness under the Due Process Clause of the Fifth Amendment when "it fails to draw reasonably clear lines between lawful and unlawful conduct." *Kramer v. Price*, 712 F.2d 174, 176 (5th Cir. 1983) (citing *Smith v. Goguen*, 415 U.S. 566, 574–78 (1974)).

The statute, entitled Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications, states:

> (a) Prohibited acts generally. Whoever –
>
> > (1) in interstate or foreign communications –
> >
> > > \*\*\*
> > > (C) makes a telephone call or utilize a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person; shall be fined under title 18 or imprisoned not more than two years, or both.

47 U.S.C. § 223(a)(1)(C). This statute is facially unconstitutional because it is both overbroad and vague.

. . .

    **1.**    **47 U.S.C § 223 is overbroad.**

Section 223(a)(1)(C) overbroadly criminalizes conduct involving a "telecommunications device" – defined in 47 U.S.C. § 223(h)(1) as "any device or

5

software that can be used to originate telecommunications or other types of communications that are transmitted, in whole or in part, by the Internet…" The ability to violate the statute by simply transmitting across the "internet" renders this provision of the statute overly broad.

Well-established authority recognizes that a statute's use of the term "internet" may be overbroad. In *Reno v. ACLU*, 521 U.S. 844, 879 (1997), the Supreme Court struck down a different provision, 47 U.S.C. § 223(a)(1)(B), for being overbroad. Expressing disproval at the statute's regulation of the "internet," the Supreme Court stated, "[t]he Internet is 'a unique and wholly new medium of worldwide human communication [,]'" that "[i]ndividuals can obtain access to. . . from *many* different sources, generally hosts themselves or entities with a host affiliation." *Reno*, 521 U.S. at 850 (internal citations omitted) (emphasis added). The Supreme Court noted that "[t]he breadth of this content-based restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective as the CDA." *Id.* at 879. The Supreme Court held the government failed to meet its burden, holding that § 223(a)(1)(B)'s overbreadth violated the First Amendment, rendering it unconstitutional. *Id.* at 885.

Just as the § 223 provision was held unconstitutional in *Reno*, §223(a)(1)(C) is also overbroad because it seeks to regulate conduct transmitted through the "internet." *Reno*, 521 U.S. at 850. And, just as in *Reno*, the government cannot meet its "*heavy* burden" to "explain why a less restrictive provision" would not be as effective. *Id.* (emphasis added).

The statute is not merely overbroad because of *what* could be targeted–the entire internet. *See* 47 U.S.C. § 223(h)(1). But also, because *how* a violation

6

occurs. A person violates the statute if they have the "intent to abuse, threaten, or harass…" § 223(a)(1)(C).

The Ninth Circuit holds similarly worded statutes are overbroad, particularly when the statute implicates First Amendment protected speech. For example, in *Wurtz v. Risley*, 719 F.2d 1438, 1448 (9th Cir. 1983), the Ninth Circuit struck a Montana state law criminalizing intimidation as facially unconstitutional. The *Wurtz* Court examined the statutory language defining intimidation as a person acting with "the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to commit a criminal offense…" *Id.* at 1439. Because the statute criminalized the communication itself—"the crime is complete as soon as the threat to commit a criminal act is communicated with the requisite intent"—the statute was overbroad by not requiring any subsequent action: "There is no link to action required; the threat need not succeed in inducing the victim to act or refrain from acting. . . [n]or must the threatened criminal act be carried out." *Id.* at 1441. Like the statute struck down in *Wurtz*, the federal statute here permits conviction with no evidence that the person intended to carry out the threat.

A few circuits have opined on the constitutionality of § 223 but did not resolve a critical question: whether the statute criminalizes *protected* speech. *See United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004), *vacated on other grounds*, 125 S. Ct. 1420 (2005), *reinstated by United States v. Bowker*, 125 F. App'x 701, 701-02 (6th Cir. 2005); *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006), *cert. denied*, 549 U.S. 1230 (2007); and *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978).

In *Bowker*, the appellant challenged the statute based on *Coates v. Cincinnati*, 402 U.S. 611 (1971), where the Supreme Court invalidated an

ordinance that punished "annoying" conduct. In *Bowker*, the Sixth Circuit distinguished *Coates*. 125 F. App'x at 379. But it did *not* consider or address whether § 223(a)(1)(C) criminalized protected speech, which would have triggered a different analysis under strict scrutiny review. *Id.* at 378 ("[O]verbreadth scrutiny diminishes as the behavior regulated by the statute moves from pure speech toward harmful, unprotected conduct."); *cf. United States v. Popa*, 187 F.3d 672, 679 (addressing this issue but declining to decide). The Sixth Circuit found no need to consider whether the statute regulated protected speech, because it found that the threats communicated were "not constitutionally protected." *Bowker*, 372 F.3d at 380-81 (citing *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (defining "true threats")).

Similarly, in *Eckhardt*, the Eleventh Circuit did not consider whether § 223(a)(1)(C) regulated political speech. Just as in *Bowker*, the *Eckhardt* court found no need to consider whether the statute criminalized protected speech, because "sexually laced calls" constituted "obscenity," which is "not within the area of constitutionally protected speech." *Eckhardt*, 466 F.3d at 943–44.

Likewise, in *Lampley*, the Third Circuit focused on "the power of the Congress to impose criminal sanctions on the placement of interstate telephone calls to harass, abuse or annoy[,]" adding that "[n]ot all speech enjoys the protection of the first amendment." *Lampley*, 573 F.2d at 787. The *Lampley* court found that the requirement of specific intent in 47 USCS § 223 negates the contention that § 223 unconstitutionally proscribes mere attempts to communicate. *Id.* None of these decisions specifically addressed whether the statute criminalizes political speech.

There is another key distinction that *Bowker* and *Eckhardt* did not address (and *Lampley* could not have addressed): whether the statute is overbroad

because it punishes conduct through the internet. The issue was not existent for *Lampley* (released in 1978) and was not discussed in *Eckhardt* or *Bowker*.

Thus, neither *Eckhardt*, *Bowker*, nor *Lampley*, addressed § 223(a)(1)(C), as applied to political speech. Both *Eckhardt* and *Bowker* acknowledged that the statute could have "unconstitutional applications," but specified the holdings do not apply to political speech. *Eckhardt*, 466 F.3d at 943–44 (noting that the defendant's calls did not address "matters of public concern"); *Bowker*, 372 F.3d at 379 ("For example, if Bowker had been charged with placing anonymous telephone calls to a public official with the intent to annoy him or her about a political issue, the telephone harassment statute might have been unconstitutional as applied to him").[4]

Finally, neither *Bowker*, nor *Eckhardt* specifically addressed the argument Mr. Juncaj raises—that including the term "internet" in the statute renders it overbroad. *Bowker*, 372 F.3d at 379; *Eckhardt*, 466 F.3d at 943–44; *See also supra*, pp. 5-6.

Thus, § 223(a)(1)(C)–a statute that directly implicates First Amendment protections–creates both a broad group that the action may be taken against and broad conduct constituting a violation, and punishes protected speech. Therefore, it is facially overbroad and must be invalidated.

---

[4] The court in *United States v. Weiss*, No. 20-cr-00013-CRB-1, 2020 WL 4340162, at *10 (N.D. Cal. July 28, 2020), also recognized this. Although the district court's decision to dismiss the indictment was reversed, the Ninth Circuit never expressly addressed whether the district court erred in finding that this recognition of *Popa* was incorrect. Similarly, it did not expressly address whether the district court's scrutiny determination was correct. *United States v. Weiss*, No. 20-10283, WL 6116629, at *2 (9th Cir. Dec. 27, 2021).

### 2.     47 U.S.C §223 is void for vagueness.

Along with overbreadth, § 223(a)(1)(C) is unconstitutionally vague. The statutory language stating, "intent to abuse, threaten, or harass" is overbroad given *Wurtz*, 719 F.3d at 1441. *See supra*, pp. 6-9. This language is also vague. The Ninth Circuit's *Wurtz* decision held "what is a [true] threat *must* be distinguished from what is constitutionally protected speech." *Id.* (emphasis added). Here, § 223(a)(1)(C) lacks any such distinguishing language.

In addition, the statute's failure to adequately define "intent to abuse, threaten, or harass," raises the same flaws as the statute in *Reno*, 521 U.S. at 871. These undefined terms "will provoke uncertainty among speakers about how the [terms] relate to each other and just what they mean." *Id.* This is especially true because "each of these terms, given their ordinary meaning, can be understood as encompassing forms of expression that are constitutionally protected." *Church of the Am. KKK v. City of Erie*, 99 F. Supp. 2d 583, 591 (W.D. Pa. 2000) (striking statute that prohibited wearing a mask "with the intent to intimidate, threaten, abuse or harass any other person" as facially overbroad and vague).

Thus, § 223(a)(1)(C) – a statute that directly implicates First Amendment protections – contains vague definitions that fail to properly provide notice of how it may be violated. Such overbreadth and vagueness renders the statute unconstitutional requiring dismissal of the indictment.

### B.     The statute as applied to Mr. Juncaj violates Mr. Juncaj's First Amendment Rights.

Analysis of § 223(a)(1)(C)'s constitutionality as applied here hinges on whether the statute addresses conduct, speech, or both – Mr. Juncaj's alleged statements fall under both categories.

10

### 1. Strict scrutiny applies because the alleged offense here is not conduct but protected speech.

Statutes that regulate content-based speech are subject to strict scrutiny review. *United States v. Alvarez*, 617 F.3d 1198, 1202 (9th Cir. 2010). Permissible exceptions are reserved for narrow categories of speech, specifically: obscenity, defamation, fraud, incitement, speech integral to criminal conduct, and true threats. *United States v. Stevens*, 599 U.S. 460, 468-69 (2010); *Virginia v. Black*, 538 U.S. 343, 358-59 (2003). Beyond these narrow exceptions, there is a juridical presumption to "protect *all* speech against government interference, leaving it to the government to demonstrate, either through a well-crafted statute or case-specific application, the historical basis for or a compelling need to remove some speech from protection." *Alvarez*, 617 F.3d at 1205.

In *Cohen v. Cal.*, 403 U.S. 15, 18 (1971) the Supreme Court rejected the States attempt to argue that a state statute entitled "Fighting; Noise; Offensive Words" only addressed conduct. Cohen was convicted of walking through a courthouse, wearing a jacket inscribed with and displaying inflammatory language. *Id.* The Supreme Court found Cohen's "conviction quite clearly rests upon the asserted offensiveness of the words Cohen used to convey his message to the public. The only 'conduct' which the State sought to punish is the fact of communication." *Id.* at 18.

Punishing communication was also the issue in *Popa*, 187 F.3d at 679 (Randolph, J. concurring) (where the concurrence argued that the majority opinion's application of intermediate scrutiny was incorrect, it noted it did "not agree with the government that § 223(a)(1)(E) is a generally-applicable regulation directed at conduct.") (cleaned up). The concurrence also added that "[a] hang-up call could, I suppose, be characterized as conduct only[,]" clarifying

11

that "telephones are devices for communicating and this statute regulates how telephones may be used for that purpose. The acts of picking up the phone and dialing are conduct." *Id.* Even the Sixth Circuit–which rejected the overbreadth challenge–recognized § 223(a)(1)(C) prohibited speech. *Bowker*, 372 F.3d at 379.

Here, as stated in the indictment, the statute punishes verbal communication through a telephone. ECF No. 1. Because Mr. Juncaj's "conduct" is allegedly making oral communications that are threatening, it is a "form of conduct but it still is 'speech.'" *Popa*, 187 F.3d at 679; *see also Bowker*, 372 F.3d at 379 (Furthermore, it is speech that is not among the "narrow categories of false speech previously held to be beyond the First Amendment's protective sweep."); *Alvarez*, 617 F.3d at 1200. As a result, § 223(a)(1)(C) regulates content-based speech and is therefore subject to strict scrutiny. *Alvarez*, 617 F.3d at 1202 (citing *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000)).

  **2. The alleged statements–even if true–do not survive strict scrutiny review.**

Under strict scrutiny, the burden of proving constitutionality shifts to the Government. *Alvarez*, 617 F.3d at 1205. The government must prove the statute serves a "compelling interest" and employs the "least restrictive means to further the articulated interest." *Sable Commc'ns of Cal. v. FCC,* 492 U.S. 115, 126 (1989). Thus, the government "must specifically identify an actual problem in need of solving and the curtailment of free speech must be actually necessary to the solution." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011). Furthermore, strict scrutiny "is a demanding standard[,]" and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Id.*

It is unclear what "compelling interest" is present in the current iteration of the law. Similar to *Popa*, Mr. Juncaj is being charged with making harassing or threatening phone calls. *Id.* at 673-74; ECF No. 1.

In *Popa*, the D.C. Circuit held that § 223 (a)(1)(C) cannot be constitutionally applied to someone simply using the phone, intending to harass and abuse a government official, over matters of public concern. 187 F.3d at 676. There, the defendant was accused of calling the United States Attorney for the District of Columbia (over several calls), and raising verbally abusive and racist comments, including calling the U.S. Attorney "a criminal, a negro," a "criminal with cold blood," and a "whore, born by a negro whore." *Id.* at 673. Yet, the *Popa* court still noted that § 223 (a)(1)(C) was targeting prohibited protected core political speech:

> The statute sweeps within its prohibitions telephone calls to public officials where the caller may not want to identify himself other than as a constituent and the caller has an intent to verbally 'abuse' a public official for voting a particular way on a public bill, 'annoy' him into changing a course of public action, or 'harass' him until he addresses problems previously left unaddressed.

*Id.* at 676-77. The *Popa* court added that even if the government could demonstrate a sufficiently important interest in protecting individuals from non-communicative uses of the telephone, punishing people like Popa "who use the telephone to communicate a political message" was not essential to the furtherance of that interest. *Id.* at 677; *see also United States v. Waggy*, 936 F.3d 1014, 1018-19 (9th Cir. 2019) (distinguishing the *Popa* decision because "complaints about the actions of a government official" were not a significant component of Waggy's calls).

Indeed, even if everything the alleged victim claims was said by Mr. Juncaj (over several minutes) is accurate, the thrust of his communication was related to anger over actions by government officials.  And (further assuming the government can prove the alleged statements are true) they at most fall under speech that the Supreme Court considers protected speech when analyzed under strict scrutiny. *Cohen*, 403 U.S. at 26 ("four-letter expletive" is protected speech)*; see also Lewis v. New Orleans*, 415 U.S. 130, 134 (1974) ("opprobrious language" is protected speech); *Sable Commc'ns of Cal.,* 492 U.S. at 126 ("to withstand constitutional scrutiny, [the statute] must [serve a legitimate government interest] by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms."); *Reno,* 521 U.S. at 879 (criminalization of indecent and offensive speech fails strict scrutiny).

And the *Bowker* decision, which found the statute is not facially unconstitutional, supports Mr. Juncaj's argument that as applied, the statute is unconstitutional here. Specifically addressing § 223(a)(1)(C), the Sixth Circuit provided a scenario that would render the statute unconstitutional:

> the telephone harassment statute, if interpreted to its semantic limits, may have unconstitutional applications. For example, if Bowker had been charged with placing anonymous telephone calls to a public official with the intent to annoy him or her about a political issue, the telephone harassment statute might have been unconstitutional as applied to him.

*Bowker*, 372 F.3d at 379–80 (cleaned up). This scenario is precisely the charged conduct here.

Finally, even assuming the government can demonstrate a compelling interest, it cannot fulfill its burden to demonstrate that it employed the "least restrictive means to further the articulated interest." *Sable Commc'ns of*

14

*Cal.,* 492 U.S. at 126. As the court in *Popa* noted, "[t]he statute could have been drawn more narrowly, without any loss of utility to the Government, by excluding from its scope those who intend to engage in public or political discourse." *Popa*, 187 F.3d at 677.

### 3. Even applying intermediate scrutiny, the government cannot meet its burden.

In *United States v. Weiss*, case no. 20-10283, WL 6116629, at *1 (9th Cir. Dec. 27, 2021), an unpublished decision, the Ninth Circuit reversed the district court's decision to dismiss the indictment for failing to specify a true threat. The Ninth Circuit did not expressly address whether the district court's determination that intermediate scrutiny applied was correct. Instead, it addressed, in part, whether the district court erred in finding that the true threat exception to protected speech did not apply. *Id.* at *1-2.

Here, even assuming arguendo that intermediate scrutiny applies, the government will still fail to meet its burden as it cannot avail itself of the true threat exception.

In *United States v. O'Brien,* 391 U.S. 367, 377 (1968), the Supreme Court articulated the test for intermediate scrutiny, which provides that "a government regulation passes intermediate scrutiny if: [1] it is within the constitutional power of the Government; [2] it furthers an important or substantial governmental interest; [3] the governmental interest is unrelated to the suppression of free expression; and [4] the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

In *Weiss*, the Ninth Circuit, concluded that it was "'not clear'" enough whether Weiss's October 2, 2018, message was a true threat to be resolvable 'as a

1  matter of law.'" *Id.* at *1-2 (Citing *Planned Parenthood of Columbia/Willamette,*
2  *Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070, 1080 (9th Cir. 2002), *as*
3  *amended* (July 10, 2002)).

4  Applying the rationale from *Weiss*, the issue then is whether, under
5  intermediate scrutiny, Mr. Juncaj's statements, if proven true, could constitute a
6  "true threat." *Id.* True threats contain both an objective and subjective
7  element. *Id.* (citing *United States v. Keyser,* 704 F.3d 631, 638 (9th Cir. 2012)
8  and *United States v. Bagdasarian*, 652 F.3d 1113, 1118 (9th Cir. 2011)).

9  To meet the objective prong element, the government must demonstrate
10 "whether a reasonable person would foresee that [his] statement would be
11 interpreted by those to whom the maker communicates the statement as a
12 serious expression of intent to harm or assault." *Keyser,* 704 F.3d at 638 (citation
13 omitted) (cleaned up). To meet the subjective prong element, the government
14 must demonstrate whether the speaker meant "to communicate a serious
15 expression of an intent to commit an act of unlawful violence to a particular
16 individual." *Bagdasarian,* 652 F.3d at 1122 (citing *Virginia v. Black*, 538 U.S.
17 343, 359 (2003)). But "[i[f it is 'not clear' whether a statement is 'protected
18 expression or [a] true threat[ ],'  it is generally 'appropriate to submit the issue, in
19 the first instance, to [a] jury.'" *Weiss, at *2* (citing *United States v. Hanna*, 293
20 F.3d 1080, 1087 (9th Cir. 2002) (cleaned up).

### a. Objective prong.

Here, a reasonable person–in fact, it appears more than one–examined whether these alleged statements constituted a true threat. Specifically, "[d]etective Lefler also spoke with his lieutenant and a senior detective at the fusion center who confirmed that it wasn't a threat according to the 9th Circuit…" Exhibit C at 4.

16

### b. Subjective prong.

The government will likewise struggle with the subjective prong. In *Weiss*, the Ninth Circuit noted that although Weiss only indicated he intended to harass "Senator McConnell, Weiss also stated that he wanted his statements to 'affect' Senator McConnell." *Weiss*, at *2.

Here, in contrast, Mr. Juncaj never indicated that he intended to harass or affect anyone. *See* Ex's A, B, and C. The government will also be unable to show that he meant "to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." *Bagdasarian,* 652 F.3d at 1122. Detective Lefler spoke to the alleged victim in the case, asking her "…if she thought someone was going to come harm her by saying you are all going to die. [redacted] said she did not think that was going to happen." Ex. C at 3. Indeed, the government's initial investigation—before media pressure—concluded the alleged statements were not a "true threat" under Ninth Circuit Law. *See* Ex.'s B and C. Only after Reuters released an article on the incident–months later–did the government reopen the matter. *Suddenly*, Mr. Juncaj's alleged statements were no longer protected by the First Amendment but were alleged threats.

Thus, under either prong, the government will fail to demonstrate a true threat exists here – therefore it cannot argue that such an exception applies. However, as noted throughout, Mr. Juncaj asserts strict scrutiny applies here.

Because the government's allegations–even if true–do not survive strict scrutiny analysis, or assuming arguendo, intermediate analysis, the indictment must be dismissed.

. . .

. . .

17

## IV.   Conclusion

The charging statute, 47 U.S.C. § 223(a)(1)(C) is facially unconstitutional due to overbreadth and vagueness. It is also unconstitutional here because it punishes protected speech and cannot withstand strict scrutiny. Mr. Juncaj asks this Court to dismiss the indictment.

Dated: December 12, 2022

Respectfully Submitted,

RENE VALLADARES
Federal Public Defender

By: */s/ Navid Afshar*
   Navid Afshar
   Assistant Federal Public Defender
   Attorney for Gjergi Juncaj