UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

GJERGI JUNCAJ,

Defendant.

Case No. 2:22-cr-00008-JCM-EJY

**REPORT AND RECOMMENDATION**

**Re: Motion to Dismiss (ECF No. 29)**

Pending before the Court is Defendant Gjergi Juncaj's Motion to Dismiss Indictment (the "Motion to Dismiss").  ECF No. 29.[1]  The Court reviewed Defendant's Motion, the government's response (ECF No. 33),[2] and Defendant's reply (ECF No. 35).

I.      **BACKGROUND**

On January 19, 2022, the government indicted Defendant on four counts of 47 U.S.C. § 223(a)(1)(C).  ECF No. 2 at 5-7.  The allegations state that on January 7, 2021, during less than a twenty minute time frame, Defendant made four phone calls to the Nevada Secretary of State's Elections Division during which he threatened an employee (the "Elections Division Employee") who answered those calls.  *Id.* at 3-4.  Specifically, on January 7, 2021, one day after the storming of the U.S. Capitol Building, Defendant made the following calls:

- 8:07 a.m.: "I want to thank you for such a great job you all did on stealing the election. I hope you all go to jail for treason.  I hope your children get molested.  You are all going to fucking die."

- 8:19 a.m.: "You are all going to die."[3]

- 8:24 a.m.: "You guys really fucked this election up … [and] are all going to die."

- 8:25 a.m.: "This is what you're going to fucking get from now on.  You are all going to fucking die and it is what you deserve."

---

[1]      A corrected version of Defendant's Motion to Dismiss appears at ECF No. 31.  Because ECF No. 31 is identical to ECF No. 29, the Court refers to ECF No. 29 herein.

[2]      A corrected version of the government's response appears at ECF No. 36.  Because ECF No. 36 is identical to ECF No. 33, the Court refers to ECF No. 33 herein.

[3]      The Elections Division Employee replied by stating she was calling the police.  ECF No. 2 at 4.

*Id*. at 5-7.  On December 12, 2022, Defendant filed a Motion to Dismiss the indictment.  ECF No. 29.

## II.      THE PARTIES' PLEADINGS

   A.      Defendant's Motion to Dismiss.

   Defendant moves to dismiss his indictment alleging 47 U.S.C. § 223(a)(1)(C) (sometimes the "Statute") is unconstitutionally vague and overbroad on its face.  ECF No. 29 at 4.  Defendant also contends the indictment should be dismissed because the Statute is unconstitutional as applied to him.  *Id.*  To support his assertions, Defendant cites a statement made by a detective in the Nevada Department of Public Safety, Investigation Division, who concluded Defendant "was using free speech and that [his calls to the Elections Division] … wasn't a true threat."  ECF No. 29 at 2-3 citing ECF No. 29-3 at 5.  Defendant argues that following the initial investigation into Defendant's actions no criminal charges were filed and it was only after an unfavorable news report that charges were brought against him.[4]  ECF No. 29 at 3.  Defendant implies the government's true motive for filing the charges was to respond to bad publicity arising from the news report.  *Id.*

   *1.      Defendant's Facial Overbreadth Argument.*

   Defendant's facial overbreadth argument focuses on the Statute's use of the phrase "telecommunications device."  The Statute states:

> Whoever in interstate or foreign communications makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person; shall be fined under Title 18 or imprisoned not more than two years, or both.

47 U.S.C. § 223(a)(1)(C).  Defendant argues the use of "telecommunications device" renders the Statute overly broad.  ECF No. 29 at 6.

   The phrase "telecommunications device" is defined in 47 U.S.C. § 223(h)(1)(C) as "any device or software that can be used to originate telecommunications or other types of communications that are transmitted, in whole or in part, by the Internet…."  Defendant contends that, in a controlling case, the Supreme Court struck down a different provision of § 223 because the

---

[4]      Linda So and Jason Szep, *U.S. Election Workers get Little Help from Law Enforcement as Terror Threats Mount*, REUTERS News (Sept. 8, 2021, 10:00 a.m.), https://www.reuters.com/investigates/special-report/usa-election-threats-law-enforcement/.

Court disapproved of the attempt to regulate transmission of content across the internet. *Id.* (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 849 (1997)). Defendant states the holding in *Reno* demonstrates "a statute's use of the term 'internet' may be overbroad," and the Supreme Court struck down 47 U.S.C. §§ 223(a)(1)(B)(ii) and 223(d)(1)(B) because the statute attempted to regulate the internet. *Id*. Defendant argues the Statute at issue here—47 U.S.C. § 223(a)(1)(C)—similarly attempts to regulate conduct that may be transmitted over the internet and, therefore, it too must be struck down as unconstitutional. *Id.* Defendant concludes because of the similarity between *Reno* and this case, the government cannot meet its burden to show a less-restrictive provision would not be as effective in accomplishing the Statute's goals.[5] *Id.*

Defendant further argues the language in the statute criminalizing the "intent to abuse, threaten, or harass" is overbroad. *Id.* at 7. Defendant points to a Ninth Circuit case that he characterizes as striking down a Montana statute as facially overbroad because it criminalized the communication of a threat to commit criminal acts. *Id.*[6] Defendant asserts the Montana statute is similar to the Statute at issue because § 223(a)(1)(C) allows for conviction without any evidence that the person intended to carry out the threat. *Id.*

---

[5] In *Reno v. American Civil Liberties Union*, the Supreme Court considered a constitutional challenge to two provisions of the Communications Decency Act. *Id.* at 849. The Supreme Court held the provisions of the Communications Decency Act—47 U.S.C. § 223(a)(1)(B)(ii) and 47 U.S.C. § 223(d)(1)(B)—by restricting protected speech among adults, foisted upon the government a "heavy burden" to explain why a less restrictive provision would not be as effective in reaching the Statute's intended purpose. *Id*. at 879.

[6] In *Wurtz v. Risley*, 719 F.2d 1438 (9th Cir. 1983), the Ninth Circuit found the statute as issue stated: "Intimidation: A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts: commit any criminal offense…." Montana Code § 45-5-203(1)(c). In striking down this statute, the court first asked "At what point in the spectrum from regulation of pure speech to regulation of unprotected conduct does section 203(1)(c) fall?" *Id*. at 1440. The Ninth Circuit found that "[w]hile subsection (c) itself refers only to commission of any criminal offense, the gravamen of the offense is the communication of a *threat* to commit any such offense in order to cause certain conduct." *Id*. at 1441 (emphasis in original). The court stated, in part, "[t]he operative act forbidden by section 203(1)(c) is communication, and the crime is complete as soon as the threat to commit a criminal act is communicated with the requisite intent. There is no link to action required; the threat need not succeed in inducing the victim to act or refrain from acting, …. [n]or must the threatened criminal act be carried out. … The thrust of the statute is thus toward pure speech and away from the regulation of conduct." *Id*. "[T]hreats have traditionally been punishable without violation of the first amendment, but implicit in the nature of such punishable threats is a reasonable tendency to produce in the victim a fear that the threat will be carried out." *Id*. "[T]he breadth of this provision, applying as it does to minor crimes without victims," would grab within its meaning "many relatively harmless expressions …." *Id*. at 1442. The Court held: "The statutory language applies so broadly to threats of minor infractions, to threats not reasonably likely to induce a belief that they will be carried out, and to threats unrelated to any induced or threatened action, that a great deal of protected speech is brought within the statute. In short, section 203(1)(c) fairly invites the application of the strong medicine of overbreadth adjudication." *Id*.

1    Although several circuits have ruled on the constitutionality of the Statute at issue, Defendant

2 avers that none have addressed whether the Statute impermissibly criminalizes "protected speech"—

3 specifically, "political speech." *Id.* at 7-9. Defendant argues that each court holding the Statute

4 constitutional did so on grounds that are not at issue here. *Id.* at 8. Without an analysis of whether

5 the Statute restricts political speech, Defendant contends the holdings by prior courts are not helpful

6 when analyzing the instant issues. *Id.* Defendant contends *United States v. Bowker*, 372 F.3d 365

7 (6th Cir. 2004), *vacated on other grounds*, 125 S. Ct. 1420 (2005), *reinstated by United States v.*

8 *Bowker*, 125 Fed.Appx. 701 (6th Cir. 2005), *United States v. Eckhardt*, 466 F.3d 938 (11th Cir.

9 2006), *cert. denied*, 549 U.S. 1230 (2007), and *United States v. Lampley*, 573 F.2d 783 (3d Cir.

10 1978) failed to consider Defendant's argument that the Statute's attempted regulation of certain

11 conduct transmitted across the internet renders it overbroad. *Id.* at 8-9.

12             *2.      Defendant Argues 47 U.S.C. § 223(a)(1)(C) is Facially Vague.*

13    Defendant contends the phrase "intent to abuse, threaten, or harass" used in the Statute is

14 vague on its face because the conduct described in the Statute is not distinguished from

15 constitutionally protected speech. *Id.* at 10 *citing Wurtz*, 719 F.2d at 1441. Defendant argues the

16 Statute does not adequately define terms thus engendering confusion in the public about how to

17 comply with the law. *Id. citing Reno*, 521 U.S. at 871; *Church of the American Knights of the Ku*

18 *Klux Klan v. City of Erie*, 99 F.Supp.2d 583, 591 (W.D. Pa. 2000).

19             *3.      Defendant Contends 47 U.S.C. § 223(a)(1)(C), as Applied, Violates His First*
20                      *Amendment Rights.*

21    Defendant argues that under Ninth Circuit precedent a statute that regulates content based

22 speech is subject to strict scrutiny review. *Id.* at 11 *citing United States v. Alvarez*, 617 F.3d 1198,

23 1202 (9th Cir. 2010). Except for a few categories of excluded speech—obscenity, defamation, fraud,

24 incitement, speech integral to criminal conduct, and true threats—Defendant states there is a heavy

25 presumption against government interference in content based speech. *Id. citing United States v.*

26 *Stevens*, 559 U.S. 460, 468-69 (2010); *Virginia v. Black*, 538 U.S. 343, 358-59 (2003). Defendant

27 contends the Statute violates his First Amendment Rights, as applied, because the Statute

28 impermissibly restricts his protected ability to engage in political discourse. *Id.* at 13.

In support of his position, Defendant cites *Cohen v. Cal.*, 403 U.S. 15, 18 (1971), in which the Supreme Court held an individual could not be prosecuted simply for wearing a shirt inscribed with inflammatory language because "[t]he only 'conduct' which the State sought to punish … [was] the fact of communication." *Id.* at 11. Defendant also cites *United States v. Popa*, 187 F.3d 672, 677 (D.C. Cir. 1999), in which the court held that, as applied to a defendant who repeatedly made vile phone calls to the United States Attorney for the District of Columbia, § 223(a)(1)(C) was overbroad because it failed to exclude "from its scope those who intend to engage in public or political discourse." *Id.* at 13-15. Defendant argues that since the Statute purports to punish Defendant for words spoken over a telephone, the Statute is regulating content based speech that must be analyzed under strict scrutiny review. *Id.* at 12. Defendant states that it is the government's burden to prove that the Statute serves a "compelling interest" and employs the "least restrictive means to further the articulated interest." *Id. citing Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). The government "must specifically identify an actual problem in need of solving and the curtailment of free speech must be actually necessary to the solution." *Id. citing Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799 (2011).

Defendant links this high standard to the D.C. Circuit's decision in *Popa* finding threats made to a government official were deemed political messages and thus unconstitutionally targeted by the Statute. *Id.* at 13-14 *citing Popa*, 187 F.3d at 676-77. Defendant contends his words to the Elections Division Employee, even if true, were related to anger over actions by government officials and, therefore, were political messages that must be analyzed under strict scrutiny. *Id.* at 14. Even if the government could meet its burden to demonstrate there is a compelling interest served by the Statute, Defendant asserts it cannot prove that the method employed is the "least restrictive means to further the articulated interest." *Id. citing Popa*, 187 F.3d at 676-77.

Finally, Defendant argues that if intermediate scrutiny were applied to this case, the government still cannot meet its burden to show the Statute is (1) within the constitutional power of the government, (2) furthering an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of

that interest. *Id.* at 15 *citing United States v. O'Brien*, 391 U.S. 367, 377 (1968). Defendant alleges the question to be answered by the Court, if it employs intermediate scrutiny, is whether Defendant's alleged statement constitute "true threats." *Id.* at 16.

There are two prongs to determine whether a true threat has been made: an objective and subjective prong. *Id. citing United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012). Defendant asserts that under the objective prong the government must demonstrate "whether a reasonable person would foresee that [his] statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id. citing id*. Under the subjective prong, Defendant argues the government must demonstrate that Defendant meant "to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." *Id. citing United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir. 2011) (*citing Black*, 538 U.S. at 359). Defendant acknowledges that if the question of whether a true threat was made is difficult to answer, then the issue should be submitted to a jury. *Id. citing United States v. Hanna*, 293 F.3d 1080, 1087 (9th Cir. 2002).

In this case, Defendant asserts the objective prong is not met because a third party—a detective—stated that Defendant's actions did not constitute a true threat. *Id.* at 17 *citing* ECF No. 29-3 at 5. Defendant contends the subjective prong is not met because Defendant's statements, if accepted as true, do not indicate that Defendant meant to harass or affect anyone. *Id.*

B.    The Government's Response.

The government responds by reminding the Court of Defendant's alleged statements made anonymously to the Elections Division Employee. These include that she was "going to fucking die"; "[t]his is what you're going to fucking get"; and "[y]ou are all going to fucking die and it is what you deserve." ECF No. 33 at 1. The government contends Defendant's arguments that 47 U.S.C. § 223(a)(1)(C) is unconstitutionally overbroad and or vague have been repeatedly dismissed by the courts. *Id.* at 2. Further, the government claims that since Defendant's statement to the Elections Division Employee were true threats, those statements are afforded no First Amendment protection. *Id.*

The government takes aim at Defendant's use of a law enforcement officer's "bare legal conclusion that Defendant's statements did not constitute true threats [contending they are] … irrelevant and inadmissible as testimony from any witness …." *Id* at 4.[7]  The government states that any question over whether Defendant is guilty of issuing a true threat must be resolved by a jury, not witnesses. *Id.*

### 1. The Government Argues 47 U.S.C. § 223(a)(1)(C) is not Overbroad.

The government draws the Court's attention to controlling case law identifying the rigorous threshold a criminal defendant must meet to prove a statute is unconstitutionally overbroad. *Id.* at 5-6.[8]  The government discusses the Sixth and Eleventh circuit cases—*Bowker* and *Eckhardt* respectively—in which those courts held 47 U.S.C. § 223(a)(1)(C) was not overbroad because the Statute proscribes communication that is not constitutionally protected.[9]  The government cites to a series of appellate decisions in which state statutes with language similar to § 223(a)(1)(C) were upheld over overbreadth challenges.[10]  *Id.* at 7.  Further, the government points to a recently decided

---

[7]     *See* footnote 1 in the government's response citing *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) (holding that a lay witness may not testify to a legal conclusion) and *United States v. Kaye*, No. 21-CR-80039, 2022 WL 860380, at *3 (S.D. Fla. Mar. 23, 2022) ("Testimony that the Defendant did or did not satisfy the elements of a true threat is, undoubtedly, a legal conclusion on an ultimate issue. . . . Whether or not a true threat existed . . . remains solely within the jury's province.").

[8]     *Stevens*, *infra* at n.10, 559 U.S. at 473 (holding that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep") (internal quotation marks and citation omitted); *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003) ("[A] law's application to protected speech [must] be substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications . . . before applying the strong medicine of overbreadth invalidation.") (internal quotation marks and citation omitted); *Los Angeles Police Dep't v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999) (holding that employing the overbreadth doctrine is to be used "with hesitation, and then only as a last resort") (internal quotation marks and citation omitted).

[9]     *Bowker*, 372 F.3d at 379; *Eckhardt*, 466 F.3d at 944.

[10]     *Shackelford v. Shirley*, 948 F.2d 935, 940-41 (5th Cir. 1991) (holding that a Mississippi statute prohibiting making threatening telephone calls "with intent to terrify, intimidate, or harass" was not facially overbroad); *Thorne v. Bailey*, 846 F.2d 241, 242 n.1, 244 (4th Cir. 1988) (holding that West Virginia statute prohibiting "mak[ing] repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number" was not facially overbroad); *Gormley v. Director, Connecticut State Department of Prob.*, 632 F.2d 938, 940 & n.1, 942 (2d Cir. 1980) (rejecting overbreadth challenge to Connecticut statute prohibiting the making of telephone calls "with intent to harass, annoy or alarm another person, . . . whether or not conversation ensues, in a manner likely to cause annoyance or alarm"); *see also United States v. Waggy*, 936 F.3d 1014, 1016 (9th Cir. 2019) (upholding Washington state telephone harassment statute against as-applied constitutional challenge where veteran defendant had repeatedly called a Veteran's Affairs medical facility demanding money and screaming obscenities).

case within the Ninth Circuit in which 47 U.S.C. § 223(a)(1)(C) facial overbreadth was rejected.[11] *Id.* at 8.

The government criticizes Defendant's reliance on *Reno v. American Civil Liberties Union* as the Supreme Court's holding addressed the uncertainty related to the words "indecent" and "patently offensive" in the context of sexually explicit content transmitted across the internet. *Id.* at 8-9 *citing Reno*, 521 U.S. at 849. The government also explains that in *Reno* the Supreme Court upheld the constitutionality of subsection § 223(a)(1)(B)(ii) regulating "obscene" rather than "indecent" material sent over the internet. *Id.* at 9 *citing Reno*, 521 U.S. at 882-83. The government takes issue with Defendant's reliance on *Wurtz* because the Statute at issue is far more tailored than the Montana statute struck down by the Ninth Circuit. *Id.* at 9-10 *citing Wurtz*, 719 F.2d at 1442-43.

### 2.   The Government argues 47 U.S.C. § 223(a)(1)(C) is not Vague.

As a threshold issue, the government avers Defendant has no standing to argue § 223(a)(1)(C) is vague. *Id.* at 10. The government cites to Supreme Court precedent standing for the proposition that if the conduct at issue "falls squarely within the hard core of the statute's proscriptions," the challenger has no standing upon which to raise the vagueness doctrine. *Id. citing Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) (internal quotation marks and citation omitted); *Parker v. Levy*, 417 U.S. 733, 756 (1974). And, the government cites to *Weiss*, arguing the court rejected any idea that the defendant could not discern his threatening conduct was proscribed by § 223(a)(1)(C). *Id. citing Weiss*, 475 F.Supp.3d at 1024-25.

The government argues that even if Defendant has standing the Statute is not vague. *Id.* at 11. The government reminds the Court that a statute is unconstitutionally vague if "one could not reasonably understand that his contemplated conduct is proscribed," and unconstitutionally vague only "if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id. citing United States v. National Dairy Products Corp.*, 372 U.S. 29, 32-33 (1963); *United States v. Osinger*,

---

[11]   *United States v. Weiss*, 475 F. Supp. 3d 1015, 1025-28 (N.D. Cal. 2020), *rev'd and remanded on other grounds*, No. 20-10283, 2021 WL 6116629 (9th Cir. Dec. 27, 2021).

753 F.3d 939, 943-44 (9th Cir. 2014).  The government cites to a Third Circuit decision holding the intent requirement in § 223(a)(1)(C) defeats any suggestion that the Statute is vague.  *Id. citing Lampley*, 573 F.2d at 787.

> 3.  *The Government says 47 U.S.C. § 223(a)(1)(C) is Constitutional as Applied to Defendant Because He Made True Threats.*

The government cites established jurisprudence holding "[t]he protections afforded by the First Amendment … are not absolute, and [the Supreme Court has] long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Id.* at 12 *citing Black*, 538 U.S. at 358.  Content based restrictions are permitted when the speech at issue is likely to incite imminent lawless action, defamation, speech integral to criminal conduct, fighting words, and true threats.  *Id. citing Alvarez*, 567 U.S. at 717.  Here, the government focuses on the true threats exception to First Amendment protection.  *Id. citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("threats of violence are outside the First Amendment.").  The government asserts a true threat is one "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," and "[t]he speaker need not actually intend to carry out the threat."  *Id. citing Black*, 538 U.S. at 359-60.

Acknowledging the objective and subjective tests that must be met for a true threat exception to apply when conducting a First Amendment analysis,[12] the government states the objective prong asks "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id. citing Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) (internal quotation marks and citation omitted).  The subjective prong asks whether the speaker "subjectively intend[ed] to threaten." *Id.* at 13 *citing Keyser*, 704 F.3d at 638.  The government asserts the mere association of Defendant's words with political issues does not, by itself, render Defendant immune from criminal proceedings under § 223(a)(1)(C). *Id.* at 13-14.[13]  Further, because an analysis of whether a true

---

[12]    *Bagdasarian*, 652 F.3d at 1118.
[13]    The government cites *Waggy*, 936 F.3d at 1019 ("[t] hat [d]efendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection."); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1222 (9th Cir. 1990) ("That appellees were engaging in protected expressive activities at the same time and to the same end as the alleged threats of violence does not immunize appellees from liability for the alleged threats. . . .

threat was made is fact intensive, juries are often charged with making this determination. *Id.* at 14.[14]   Nonetheless, the government argues, on a fact by fact basis, why a reasonable jury could find Defendant's statements constitute true threats. *Id.* at 14-24.

First, the government argues Defendant's use of the word "I" differentiates the facts in this case from those in *Weiss* on which Defendant relies. *Id.* at 15.   In *Weiss* the district court held there was no express threat made by the defendant directed at a U.S. Senator because the statements indicated someone other than defendant in the "DC resistance" would be inflicting harm on the Senator. *Id. citing Weiss*, 475 F. Supp. 3d at 1020, 1036.  However, the Ninth Circuit disagreed with the district court's findings holding the defendant's language and use of a personal email address in his messages could lead a jury to find true threats were made. *Id. citing Weiss*, 2021 WL 6116629, at *2.  Here, the government contends Defendant's use of the word "I" demonstrates he intended to participate in the threatened death of the Elections Division Employee as well as other election workers. *Id.*  The government also argues use of repetitive language—"You are all going to fucking die"—as evidence of Defendant's subjective intent. *Id.* at 16-17 *citing United States v. Liesse*, No. 20-10096, 2021 WL 5275819, at *2 (9th Cir. Nov. 12, 2021) (noting that "reiterated threatening communications" can be "indicative of subjective intent"), *citing United States v. Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021).

Second, the government asserts Defendant's threatening tone and demeanor are important factors for a jury to consider when evaluating the presence or absence of a true threat. *Id.* at 17-18 *citing Liesse*, 2021 WL 5275819, at *2 n.3 (noting the significance of a jury's assessment of "the tone, volume, and tenor of" a defendant's threats); *United States v. Stewart*, 420 F.3d 1007, 1015 (9th Cir. 2005) (looking closely at the tone of the defendant's voice in deeming whether his statements to a federal judge were true threats); *United States v. Ford*, 730 F. App'x 446, 448 (9th Cir. 2018) (holding that testimony about a defendant's "rather clear [and] angry" tone, as well as his rapid speaking speed, showed he had a subjective intent to threaten).

---

Nor does the fact that appellees were politically motivated immunize them from liability if they in fact engaged in threats of violence.").

[14]    *Fogel v. Collins*, 531 F.3d 824, 829 (9th Cir. 2008) ("whether political speech is protected political hyperbole or an unprotected true threat can be an issue for a jury, particularly in cases of criminal prosecution.") (citing *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994).

Third, the startling and violent events of January 6, 2021 in Washington, D.C. occurred just one day prior to Defendant's initiation of his four phone calls, which is context the government argues must be considered when analyzing whether a true threat was made.  *Id.* at 18-19 *citing United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) ("Alleged threats should be considered in light of their entire factual context, including the surrounding events . . . ."), *overruled in part on other grounds by Black*, 538 U.S. at 359-60.  The government points to the preceding months of demonstrations—some armed—that occurred in state capitals across the United States, including Carson City, to further support this contention.  *Id.* at 19.

Fourth, the government argues the Elections Division Employee's fearful reaction to Defendant's calls must be considered in the Court's analysis.  *Id.* at 20 *citing Weiss*, 2021 WL 6116629, at *2; *see also Liesse*, 2021 WL 5275819, at *2 (noting the significance, in a true threat assessment, of a bank teller's testimony that "he feared for his safety" in response to the defendant's two telephonic threats).  The government points to the Elections Division Employee's statement along with law enforcement's response to Defendant's phone calls as demonstrations that Defendant's statements were likely true threats.  *Id.* at 20-21.  The government contends Defendant was unconditional in his statements, which made them more threatening.  *Id.* at 21.[15]  Defendant's statement contained no exception or ability to meet any demands.  *Id.*  Instead, Defendant stated plainly and repeatedly over an 18 minute interval that Election Division employees were "going to fucking die," which favors finding Defendant's statements true threats.  *Id.*  Finally, because Defendant's repeated statements to the Elections Division Employee were made directly and privately they are properly deemed true threats in comparison to statements made publicly and to no particular individual.  *Id.* at 22-23 *citing Planned Parenthood*, 290 F.3d at 1099 (Kozinski, J., dissenting) ("We have recognized that statements communicated directly to the target are much more likely to be true threats . . . .").

---

[15]     The government compares *Watts v. United States*, 394 U.S. 705, 708 (threat to kill president conditioned on individual being drafted), *with Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1085 (9th Cir. 2002) ("wanted" posters of abortion providers constituted "communication [that] was not conditional or casual").

The government argues that when all these facts are taken into consideration, Defendant made an objective and subjective true threat to the Elections Division Employee. *Id.* at 23-24.

C.    Defendant's Reply.

Defendant reiterates that his repeated telephone calls to and conversations with the Elections Division Employee, assuming they occurred as described, were political speech and warrant an analysis under strict scrutiny or, at the minimum, intermediate scrutiny.   ECF No. 35 at 1-2. Defendant accuses the government of barely acknowledging its high burden under either of these standards of review. *Id.* at 2. Defendant notes the government's failure to address the Reuters News article, which Defendant contends motivated the charges filed against him. *Id.* Defendant takes issue with the government's factual contentions that: (1) Defendant "threatened" others in the Elections Division; and (2) "one of the multiple officers who investigated" Defendant did not believe he made true threats. *Id.* at 3-4.

1.    *Defendant Contends the Government Fails to Rebut the Facts and Case Law Demonstrating the Statute is Facially Overbroad.*

Defendant (incorrectly) argues the government fails to acknowledge that *Bowker* and *Eckhardt* do not resolve the question of whether the Statute is unconstitutional when applied to political speech. *Id.* at 5. Defendant argues the facts in this case fit neatly into the following quote from *Bowker*: "placing anonymous telephone calls to a public official with the intent to annoy him or her about a political issue…might have been unconstitutional …." *Id.* at 5-6 *citing Bowker*, 372 F.3d at 379. Defendant further criticizes the government's position on *Reno* arguing the government fails to refute the claim that the inclusion of the word "internet" may render a statute unconstitutional. *Id.* at 6.

Defendant challenges the government's reliance on *United States v. Tello*, 600 F.3d 1161, 1165 (9th Cir. 2010) and *United States v. Nader*, 542 F.3d 713, 722 (9th Cir. 2008), arguing that neither of these cases raise the type of constitutional challenge asserted by Defendant. *Id.* at 8.[16] Finally, Defendant disputes the government's attempt to distinguish *Wurtz* from the instant case

---

[16]     In *Tello*, court upheld a conviction under 18 U.S.C. § 2422(b) following a challenge over the State of California's jurisdiction.  The court in *Nader* held intrastate phone calls made with intent to further unlawful activities may violate 18 U.S.C. § 1952(a) because the telephone is a facility of interstate commerce.

1    claiming the government does not state a meaningful difference between the Montana statute, struck

2    down by the Ninth Circuit, and the Statute at issue here.  *Id.* at 9.

3          2.    *Defendant says the Government Fails to Rebut Defendant's Argument
                 Demonstrating the Statute is Facially Vague.*

4

5          Defendant dismisses the government's contention that he does not have standing to challenge

6    the statute on the grounds of vagueness asking "how this Court could rule as to standing without

7    first resolving whether the statute is vague either facially or as applied here."  *Id.* at 9-10.  Defendant

8    contends the government's reliance on *Weiss* is misplaced because the case was overruled, although

9    on bases other than standing.[17]  *Id.* at 10.  Defendant takes issue with the government's invocation

10   of the Supreme Court's holding in *Parker* because that case dealt with the constitutionality of

11   military articles, as well as with *Broadrick*, which dealt with certain parties' attempt to join a

12   constitutional challenge when those parties had not suffered a legal injury.  *Id.* at 10-11 *citing Parker*,

13   417 U.S. at 760; Broadrick, 413 U.S. at 608.  Defendant argues no authority cited by the government

14   supports the conclusion that Defendant does not have standing to raise a vagueness challenge to §

15   223(a)(1)(C).  *Id.* at 11.

16         3.    *The Government Fails to Rebut the Statute, as Applied to Defendant, Violates
                 His First Amendment Rights.*

17

18         Defendant argues the government, by not responding to whether strict or intermediate

19   scrutiny applies, has waived that issue, and has failed to rebut the charge that the conduct at issue

20   does not constitute true threats.  *Id.* at 11-12.  Defendant again contends that since the Statute

21   punishes communication through a telephone, the government has the burden to show either a

22   "compelling interest" or "the least restrictive means to further the articulated interest."  *Id.* at 12

23   *citing Sable Communications*, 492 U.S. at 126.  Defendant avers the government similarly waived

24   any argument that it met its burden under intermediate scrutiny.  *Id.* at 13 *citing O'Brien*, 391 U.S.

25   at 377.  Regarding the objective and subjective prongs of the "true threat" analysis, Defendant

26   reiterates that the government has failed to meet either prong.  *Id.*

27

28   ──────────────────
     [17]      *Weiss*, 2021 WL 6116629, at *3.

Under the objective prong of the true threat test, Defendant contends the government's reliance on *Hanna* is misplaced because, unlike this case, the defendant in *Hanna* made several written threats to the then-President of the United States, and law enforcement interpreted the defendant's messages as a threat. *Id.* at 14-15 *citing Hanna*, 293 F.3d at 1082, 1085. Defendant repeats his assertion that the government minimizes law enforcement's analysis of his actions finding no true threat and the Reuters news article demonstrating how the government's position is flawed. *Id.* at 15-16. Defendant contests the government's reliance on *Weiss* because, unlike the defendant in *Weiss*, Defendant never knew the identity of the person to whom he was speaking. *Id.* at 16. Defendant takes issue with the government's attempt to tie his purported action to the events of January 6, 2021—the riot at the U.S. Capitol Building—arguing that other than Defendant's phone calls occurring the next day, the government provided no nexus between the two events. *Id.* at 17.

Under the subjective prong, Defendant contends the government's reliance on *Stewart* is misplaced because the defendant in that case (unlike Defendant) made specific threats about whom he wanted to target, how he wanted to kill the target, and the target's physical description and location. *Id.* at 18 *citing Stewart*, 420 F.3d at 1019. In contrast, Defendant contends he never made a specific threat and only expressed anger about past political events. *Id.* at 18-19. As opposed to *Weiss*, Defendant points to the victim's statement that she did not give credence to Defendant's statements, and the victim's conclusion quashes the argument the government makes about Defendant's "raised voice." *Id.* at 19 *citing* ECF No. 29-3 at 4.

## III.   DISCUSSION

Federal Rule of Criminal Procedure 12(b)(1) allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Ninth Circuit case law holds that a motion to dismiss under Rule 12(b)(1) "is appropriately granted when it is based on questions of law rather than fact." *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987) (citation omitted). "There are two ways in which a district court can dismiss an indictment: (1) based on constitutional grounds; or (2) based on the court's inherent supervisory power." *United States v. Lanier*, Case No. 2:19-cr-00327-GMN-VCF-

1, 2022 WL 2953149, at *5 (D. Nev. July 25, 2022), *citing United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.), *cert. denied*, 434 U.S. 825 (1977).  In this case, Defendant is asking the Court to dismiss his indictment on constitutional grounds.  Defendant says the Statute under which he is being prosecuted is facially vague and overbroad and, even if not facially void, unconstitutional as applied to him in this circumstance.  The Court addresses each argument in turn.

> A.   <u>47 U.S.C. § 223(a)(1)(C) is not Facially Overbroad.</u>

As quoted above, the Statute under which Defendant is charged states:

> Whoever in interstate or foreign communications makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person; shall be fined under title 18 or imprisoned not more than two years, or both.

47 U.S.C. § 223(a)(1)(C).

Defendant challenges two provisions of the Statute as overly broad including: (1) use of the phrase "telecommunications device," which is defined as including the internet as a platform for communication, and (2) the words "intent to abuse, threaten, or harass."  Defendant argues the Statute is so broad as to capture protected First Amendment speech, and, therefore, § 223(a)(1)(C) warrants strict scrutiny review, something the government has not and cannot satisfy.

Under Supreme Court precedent, a statute is facially overbroad "if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008), *citing Hicks*, 539 U.S. at 119-20.  Courts must strike a balance between the societal benefits and costs of governmental restrictions on some forms of speech.  *Id.*  For this reason, a statute's overbreadth must be "substantial" when compared to the statute's plainly legitimate sweep.  *Id.* at 292-93 *citing Board of Trustees of State University of N.Y. v. Fox*, 492 U.S. 469, 485 (1989); *Broadrick*, 413 U.S. at 615.  Judicial invalidation of a statute for overbreadth is "strong medicine" not to be "casually employed." *Id. citing Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999).

While there are no Ninth Circuit cases directly addressing a facial challenge to § 223(a)(1)(C) on the grounds of overbreadth, decisions from other circuits provide the Court with useful guideposts when analyzing whether the Statute is unconstitutionally overbroad.  In *Bowker*, the Sixth Circuit held § 223(a)(1)(C) is not overbroad because, although the law "prohibits abusive, threatening or

harassing communications, … the thrust of the statute is to prohibit communications intended to instill fear in the victim, not to provoke a discussion about political issues of the day." *Id.*, 372 F.3d at 379.[18]  The Circuit Court reasoned the nature of receiving an unwelcome and anonymous phone call and crafting legislation in response to the possible negative outcomes of such phone calls was compelling and narrowly circumscribed.  *Id.*  The court acknowledged that if a person placed a call to a public official with the intent to annoy him or her about a political issue, the Statute "might have been unconstitutional as applied to" that person.  *Id.*  However, even if a statute has potentially unconstitutional applications, invalidating the statute on its face is not appropriate.  *Id.* at 380, *citing Parker v. Levy*, 417 U.S. 733, 760 (1974).  In sum, the Sixth Circuit rejected the argument that the Statute was facially overbroad just because it might be unconstitutional as applied in a particular situation.  This comports with the standard that declaring a statute constitutionally overbroad is strong medicine not to be casually applied.

In *Eckhardt*, the Eleventh Circuit found that although the defendant claimed the content of his approximately 200 phone calls to a labor union employee contained "matters of public concern," the true purpose of the calls was to "harass and frighten [the employee]." *Id.*, 466 F.3d at 944.  Due to the true purpose of the defendant's phone calls, and the lack of any discernible constitutionally protected speech, the Eleventh Circuit agreed with the holding in *Bowker* finding § 223(a)(1)(C) was not overbroad in scope.  *Id.*

The Court agrees with the reasoning of the Sixth and Eleventh Circuits.  The Court finds, as did the court in *Bowker*, that the Statue is compelling and narrowly circumscribed.  The purpose of § 223(a)(1)(C) is to prevent anonymous communication—including through the telephone—to a person with the intent to abuse, threaten, or harass that person.  *Bowker*, 372 F.3d at 379.  The Court is not persuaded by either of Defendant's arguments regarding facial overbreadth.

First, the Court rejects Defendant's argument that the Statute is facially overbroad because it regulates conduct over the internet through use of the phrase "telecommunications device."  The

---

[18]     Defendant's focus on the use of the word "annoy" when arguing that Bowker placed anonymous telephone calls to a female news reporter with the intent to annoy her is not compelling.  Here, the government does not charge Defendant with making annoying calls.  Rather, Defendant is charged with  making threats over the telephone.  Further, the word "annoy" was removed from the Statute in 2013.  Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, § 1102, 127 Stat. 135 (2013).

law establishes the internet is an instrument of interstate commerce subject to the regulatory powers of Congress. *United States v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007), *citing United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce....") (other citations omitted). Second, Defendant mistakenly relies on *Reno v. American Civil Liberties Union* for the proposition that the Supreme Court found regulation of the content of speech over the internet overbroad. In its decision invalidating certain sections of the Communications Decency Act, the Supreme Court expressed concern about specific portions of the law regulating "indecent transmission[s]" and "patently offensive display[s]" of pornographic images because the phrases "provoke[d] uncertainty among speakers about how the two standards relate to each other and just what they mean." 521 U.S. at 870-71. The Supreme Court pointed out that the portions of the Communications Decency Act regulating the transmission of "indecent" and "patently offensive" did not have supplemental definitions for the aforementioned phrases and thus created a "risk of discriminatory enforcement." *Id.* at 871-72 (citation omitted).[19] Although the Supreme Court distinguishes regulations involving the internet from those affecting the broadcasting industry, the Court never discusses, let alone opines, that regulation of communications over the internet requires a higher level of scrutiny than other forms of communication regulated by Congress. *Id.* at 870. In sum, the reasoning and holding in *Reno* does not support the conclusion that § 223(a)(1)(C) is facially overbroad because the phrase "telecommunication device" could include communication over internet.

Third, Defendant cites to *Wurtz*, 719 F.2d at 1441, for the proposition that the Statute is facially overbroad because, like the Statute at issue here, the statute in *Wurtz* "permits conviction with no evidence that the person intended to carry out the threat." ECF No. 29 at 7. As discussed above, the statute at issue in *Wurtz* was overbroad because the language "applie[d] … so broadly to threats of minor infractions, to threats not reasonably likely to induce a belief that they will be carried out, and to threats unrelated to any induced or threatened action, that a great deal of protected speech

---

[19]     The Supreme Court in *Reno* posed hypotheticals to illustrate the problem evinced by the subjective nature of the phrases. *Id.*, 521 U.S. at 871.

is brought within the statute." *Id.*, 719 F.2d at 1442.  In sum, the court found the statute regulated "pure speech" not conduct.  *Id.*  Nevertheless, the Ninth Circuit acknowledged the principle that "threats have traditionally been punishable without violation of the first amendment…[if there is] a reasonable tendency to produce in the victim a fear that the threat will be carried out." *Id.*, 719 F.2d at 1441 (citation omitted).

The Statute here is distinct from the Montana statute struck down in *Wurtz* in two key ways.  First, the Montana statute allowed for prosecution any defendant who "communicates to another a threat to perform…*any criminal offense*."  (Emphasis added.)  It was for this reason—the vast amount of protected speech brought within the Montana statute—that the Ninth Circuit decided to take the rare step of administering the "strong medicine" and find the law facially overbroad.  There is no such broad language in § 223(a)(1)(C).  Instead, the Statute is tailored to encompass specific forms of conduct performed over specific modes of communication.  Second, the Statute includes the requirement that the communicator be anonymous.  This language of the Statute excludes a sizable amount of communication from its purview and focuses the Statute's aim on a narrow category of conduct.  As stated in *Bowker*, the form of speech prohibited must be targeted to a specific individual, received in private, and more likely to instill fear in the victim due to the anonymity of the caller inhibiting the victim's ability to confront the caller.  372 F.3d at 379.  The Court agrees with the Sixth Circuit that § 223(a)(1)(C), as drafted, was properly circumscribed and its interest satisfactorily compelling to allow for the restriction of this form of speech.  Thus, the Court finds that § 223(a)(1)(C) is not overbroad on its face.

B.     47 U.S.C. § 223(a)(1)(C) is not Facially Vague.

Defendant argues the statutory language "intent to abuse, threaten, or harass" is vague because there is no language distinguishing this language from what is "constitutionally protected speech." ECF No. 29 at 10 *citing Wurtz*, 719 F.2d at 1441.  Defendant contends these words are not adequately defined and have caused, and will continue to cause, confusion in the general public about what the law prohibits.  *Id.*  Defendant further states, in conclusory fashion, that the phrase "intent to abuse, threaten, or harass" invokes the same issues that led to the decision in *Reno* overturning portions of the Communications Decency Act.

Well established law instructs that "an enactment…may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interest." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999), *citing Kolender v. Lawson*, 461 U.S. 352, 358 (1983).  A criminal statute may be invalidated on the grounds of vagueness if the law either (1) fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) authorizes or encourages "arbitrary and discriminatory enforcement." *Id.*  "[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." *Id. citing Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966).

"The touchstone of a facial vagueness challenge in the First Amendment context … is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *California Teachers Ass'n v. State Board of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis in original) *citing Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976).  Indeed, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *California Teachers Ass'n*, 271 F.3d at 1151.

The burden of demonstrating the failure of a law to meet the standards set forth in *Morales* falls on the party challenging the law.  *Hernandez v. City of Phoenix*, 43 F.4th 966, 982 (9th Cir. 2022).  Defendant does not discuss, let alone demonstrate, the vagueness he alleges poses "a real and substantial threat to protected expression." *McEntee v. Merit Systems Protection Bd.*, 404 F.3d 1320, 1333 (Fed. Cir. 2005).

The two circuit courts to consider a challenge to § 223(a)(1)(C) based on facial vagueness have rejected the argument.  In *Bowker*, the Sixth Circuit held "the statutory language must be read in the context of Congressional intent to protect innocent individuals from fear, abuse, or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives." *Id.*, 372 F.3d at 382-83 *citing Lampley*, 573 F.2d at 787.  Similarly, the Eleventh Circuit

stated definitively that "[§223(a)(1)(C)] provides adequate notice of unlawful conduct." *Eckhardt*, 466 F.3d at 944.

If the words of a particular statute are words of "common understanding" that are understandable to people of ordinary intelligence, they are not vague. *California Teachers Ass'n*, 271 F.3d at 1151 (holding that the words "curriculum" and "instruction" were not vague in the context of school activities), *citing Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972). The nature of the enactment must also be considered when weighing the amount of vagueness allowed by the Constitution. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). There is no authority provided by Defendant standing for the proposition that the words "abuse," "threaten," or "harass" in the context of telephonic communication are not words of "common understanding" unable to be understood by people of ordinary intelligence. Further, the fact that § 223(a)(1)(c) does not, by its terms, limit its scope to "true threat" or define commonly used words does not result in the conclusion that the statute chills speech protected by the First Amendment. By clear law, in order for threatening speech proscribed by the Statute to fall outside First Amendment protection, the speech would have to communicate a "true threat." *Black*, 538 U.S. at 359 (citations omitted). For these reasons, the Court finds that § 223(a)(1)(C) is not vague on its face.[20]

C.    47 U.S.C. § 223(a)(1)(C) is not Unconstitutional as Applied to Defendant.

Any challenge to a statute as applied to a litigant's particular speech activity requires demonstration that "even though the law may be capable of valid application to others" it was unconstitutional as applied to him. *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Here, Defendant argues that § 223(a)(1)(C) as applied to him violated his First Amendment right to engage in protected political speech. Defendant further contends that in order to criminalize his First Amendment protected speech, the government must show a compelling interest. The Court must determine whether Defendant's statements constitute protected political speech that warrant strict or intermediate scrutiny of § 223(a)(1)(C) and, if so, were they true threats and thus not shielded from

---

[20]    The Court does not reach the issue of standing because Defendant's constitutional challenges otherwise fail.

liability by their political nature?  *Popa*, 187 F.3d at 676-77; *Waggy*, 936 F.3d at 1019; *McCalden*, 955 F.2d at 1222; *Popa*, 187 F.3d at 677.

Case law presents a range of speech tested for First Amendment protection.  In *Bowker*, the Sixth Circuit held the defendant's express and implied threats of bodily harm to a news reporter received no constitutional protection.  *Id.*, 372 F.3d at 380.  In *Popa*, the D.C. Circuit, applying intermediate scrutiny to a case challenging the Statute as applied to a defendant's phone calls to the United States Attorney, held the defendant's speech concerned "the action[s] of a government official" and comprised "a significant component of his calls."  *Id.*, 187 F.3d at 677.  On this basis, prosecution of the defendant under § 223(a)(1)(C) was unconstitutional as applied.  *Id.* at 678.

Here, Defendant made four phone calls to the Nevada Secretary of State's Elections Division on January 7, 2021, the day after the U.S. was transfixed by the invasion of the U.S. Capitol Building by individuals who believed the presidential election was stolen from then-President Trump.  ECF No. 2 at 3-4.  The indictment recites portions of the recorded calls:

- Call 1 was at 8:07 a.m.  Defendant stated: "I want to thank you for such a great job you all did on stealing the election. I hope you all go to jail for treason. I hope your children get molested. You are all going to fucking die."

- Call 2 was at 8:19 a.m.  Defendant reiterated: "You are all going to die."  The Elections Division Employee stated she was calling the police.

- Call 3 was at 8:24 a.m.  Defendant stated for the third time: "You guys really fucked this election up … [and] are all going to die."

- Call 4 was at 8:25 a.m.  Defendant told the same Elections Division Employee, "This is what you're going to fucking get from now on.  You are all going to fucking die and it is what you deserve."

*Id.* The undisputed words repeated four times in 18 minutes does not immediately sound in political speech irrespective of anger over governmental actions as Defendant contends.  ECF No. 29 at 14.  With respect to Defendant's contention that the statements did not "reference" the January 6, 2021 events at the U.S. Capitol, threaten to "storm the Secretary of State's Office," or "demand that the election worker stop any type of activity," (ECF No. 35 at 17) this too does not preclude a finding that the Statute, as applied, was unconstitutional.

The language Defendant used is sufficient to establish the intent to "abuse, threaten, or harass," and did cause the Elections Division Employee "to become fearful and upset."  ECF No. 33

at 3.  Defendant made threatening statements, anonymously and repeatedly, to an Elections Division Employee just one day after the January 6, 2021 violent storming of the U.S. Capitol Building. Defendant complained of election fraud in Nevada, which is identical to the message of the January 6th rioters.  Defendant repeatedly stated the Elections Division Employee and others were going to die and went further to state he hoped children would be molested.  While, as stated, Defendant's language does not, at first blush, suggest a matter of public concern or political speech, the Court finds that whether Defendant's speech might be "protected political hyperbole" or a "true threat" must be decided by a jury as this is a fact intensive inquiry that presents some heretofore unseen contextual circumstances given the January 6, 2021 events.

As the Ninth Circuit explained in *Fogel*, 531 F.3d at 829, the decision of whether certain speech is fairly categorized as "protected political hyperbole" should be left for a jury, especially in matters of criminal prosecution.[21]  As stated in *Hanna*, if "'it [is] not clear that the communications were protected expression [instead of] true threats,' it [is] appropriate to submit the issue, in the first instance, to the jury."  293 F.3d at 1087 (brackets omitted) (quoting *Planned Parenthood*, 290 F.3d at 1070).

Because the Court declines to make a finding that 47 U.S.C. § 223(a)(1)(C) restricts Defendant's protected political speech or that his actions constituted true threats, the Court does not reach the issue of "true threat."  Whether § 223(a)(1)(C) was unconstitutionally applied to Defendant must be decided through a trial, by a jury.

## IV.   RECOMMENDATION

Accordingly, and based on the foregoing analysis of all facts and the law in this case, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss Indictment (ECF No. 29) be DENIED.

Dated this 31st day of January, 2023

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[21]      Because the Court recommends this matter be presented to a jury for determination of whether Defendant's statements to the Elections Division Employee are protected political hyperbole, the Court does not reach the issue of whether strict or intermediate scrutiny applies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).